EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* LUCIANO ZENÓN RODRÍGUEZ c/p JULIO ZENÓN RODRÍGUEZ, acusado y apelante.

*Número:* CR-64-260      *Resuelto:* 7 de diciembre de 1964

*Miguel E. Herrero Frank,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *J. F. Rodríguez Rivera,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

PER CURIAM: Por sentencia de 18 de septiembre de 1964 resolvimos que la evidencia creída por el tribunal a quo era suficiente para sostener la convicción del apelante y en su consecuencia confirmamos la que le condenó a sufrir 10 días de cárcel más la suspensión de su licencia de conductor por un año por conducir un vehículo de motor bajo los efectos de bebidas embriagantes.

Un nuevo análisis detallado de toda la prueba presentada nos convence de que la misma no estableció la culpabilidad del acusado más allá de una duda razonable. La de cargo consistió en el testimonio del policía Guillermo Ramos y en el de Modesto Canales.

El policía declaró que el día 2 de junio de 1963 notificaron al cuartel de la policía que el acusado Luciano Zenón Rodrí-

guez había tenido un accidente con su automóvil. Se personó al sitio de los hechos en la carretera 993 y allí encontró el automóvil del acusado al lado izquierdo de la carretera, chocado contra un árbol; que como a los quince minutos después vio al acusado en el hospital. Sigue declarando:

"P.—Qué le dijo él, si le dijo algo?

R.—Bueno, él, yo lo interrogué sobre el accidente. Entonces, cuando hablé con él, él expedía fuerte olor a alcohol. Entonces, le sugerí que si quería tomarse la prueba de sangre; dijo que no. A veces decía que si y otras veces se negaba.

Entonces, dije si la prueba de orina y me dijo que no.

Entonces, le expliqué el alcance, lo que tendría que hacer entonces, y me dijo que estaba bien. Entonces, procedí a llevarlo.

P.—Ud. le preguntó sobre el automóvil?

R.—Yo dije . . . a mi no me dijo que él había chocado nada, solamente yo dije cómo había sido eso y me dijo que chocó y que salió herido él y el otro.

P.—Que chocó y que salió herido él y el otro?

R.—El y Modesto Canales.

P.—Dijo quién iba conduciendo el vehículo?

R.—Bueno, me dijo que él era el que iba conduciendo el vehículo, que el vehículo es de su propiedad.

P.—Ud. lo vió caminar a él?

R.—En el hospital yo hablé con él, ¿verdad?

P.—Estaba de pie él?

R.—Si, señor.

P.—Dígame, y se portaba él como una persona normal en ese momento?

R.—Bueno, no se si estaba normal, frente a mi estuvo normal, solamente se le veían los ojos bien rojos.

P.—No daba tumbos?

R.—No, él cuando yo llegué estaba parado también, yo hablé con él lo que iba a hablar con él, nada más.

P.—Entonces, esta declaración que prestó aquí Ud., la prestó ante el Juez de Distrito de Vieques?

R.—Si, señor.

P.—Dígame, testigo, Ud. está seguro que él no daba tumbos?

R.—Bueno, él, mientras yo estuve, al yo llegar él estaba caminando por el . . . o sea, muy nervioso. Entonces, lo llamé y hablé con él.

P.—Pero no daba tumbos o daba?

DEFENSA: Objeción, Vuestro Honor, ya el testigo contestó que no daba.

LA CORTE: Adelante.

R.—Bueno, él se veía que estaba mal agolpeado, no se si era a consecuencia de los golpes.

EL FISCAL: La pregunta es si daba tumbos o no daba tumbos.

R.—Si, señor.

P.—Daba tumbos?

R.—Si, señor." (T.E. págs. 5 a 6.)

En la repregunta declaró que el acusado tenía un golpe y botaba sangre. A la defensa le contestó:

"Defensa: Lo cierto es que botaba bastante sangre?

R.—Si, yo veía que estaba agolpeado y se veía botando sangre."

Declaró además, que el acusado le dijo que iba guiando su propio automóvil.

El otro testigo, Modesto Canales, declaró que el día de los hechos andaba con el acusado. A preguntas del Fiscal declaró como sigue:

"P.—Dónde se montó Ud. con él?

R.—Frente a mi casa.

P.—Frente a su casa. Testigo, en qué condiciones, si lo sabe Ud., estaba él cuando Ud. se montó en el carro?

R.—Bueno, estaba bien.

P.—Estaba bien?

R.—Así es, yo lo veía bien.

P.—Y después de montarse, siempre lo vió bien?

R.—No, cuando venía de allá para acá, no estaba como estaba, no lo vi muy bien.

LA CORTE: Cuando venía de allá para acá no lo vió?

EL FISCAL: No lo vió muy bien?

R.—No estaba como estaba primero.

P.—Y cómo era que estaba él?

R.—Bueno, cuando venía para acá yo dije que estaba borracho porque venía a bastante velocidad.

P.—Venía?

R.—A bastante velocidad y él nunca corre. ¿ve?

P.—El nunca corre?

R.—Nunca corría así—y yo dije, 'ah, pues, éste está borracho'.

P.—Hizo Ud. declaración en alguna parte?

R.—Si, señor.

P.—Al Juez de Distrito.?

R.—Al Juez de Vieques.

P.—Dígame, y pasó algo allí cuando Uds. venían en el carro?

R.—Bueno, chocó.

P.—Con qué chocó?

R.—Con un palo.

P.—Ese palo estaba en el centro de la carretera?

R.—A la orilla.

P.—Dentro de la carretera o fuera de la carretera?

R.—Fuera de la carretera, en la orilla.

P.—Nada más con el testigo. Quién iba guiando el carro cuando ocurrió el accidente?

R.—El.

P.—Quién es él?

R.—Zenón.

P.—Nada más." (T.E. págs. 9 a 11.)

En la repregunta declaró que el accidente sucedió cuando el acusado al enfrenar perdió el control. Siguió declarando así:

"DEFENSA: Ud. declaró que él no había bebido?

R.—Ah?

P.—Aquí a preguntas del Fiscal declaró que no había bebido?

EL FISCAL: No declaró esa pregunta él, al contrario, declaró que lo había visto borracho.

LA CORTE: El no ha dicho eso.

DEFENSA: Qué fue lo que Ud. declaró, entonces, Modesto, que cuando se montaron que él iba bien?

R.—Si, señor.

P.—Cuando iba por la carretera, ¿qué pasó?

R.—Cuando venía de allá para acá noté que estaba ajumado.

P.—Qué estaba tomando?

LA CORTE: Que estaba ajumado.

DEFENSA: Ud. lo vió bebiendo?

R.—Bueno, yo me di dos palos con él.

P.—Y cuántos se dió él?

R.—Uno y uno.

P.—Cómo es, entonces, en todo el tiempo que estuvo con Luciano, se dieron dos palos?

R.—Si, señor.

P.—Nada más. Luego ocurrió el accidente después que se dieron dos palos.

Nada más. Sr. Juez.

EL FISCAL: Eso Ud. se dió con él. Cuánto tiempo estuvo montado con él en el automóvil desde que salió de su casa?

R.—Bueno, como más o menos dos horas.

P.—Como dos horas, y dónde estuvieron?

R.—Bueno, fuimos, dimos una vuelta por Puerto Real y fuimos a la Esperanza; en la Esperanza fue que nos dimos los dos tragos." (T.E. págs. 12 a 13.)

El acusado declaró. Explicó lo sucedido en la siguiente forma:

"P.—Tenga la bondad de explicarle al Sr. Juez lo que sucedió el 2 de junio del 1963 con el automóvil que Ud. manejaba?

R.—Pues, ese día venía del Sur al Norte llegando al pueblo de Vieques, o sea, del barrio Esperanza y aproximándome a una curva, pues, apliqué los frenos del automóvil, se reventó una goma y choqué la parte izquierda delantera.

P.—Dígame, Luciano, Ud. recibió algún golpe, algún impacto como consecuencia del accidente?

R.—Recibí fractura del hueso nasal.

P.—Ud. sangró con motivo de la fractura del hueso nasal?

R.—Tuve una hemorragia que duró aproximadamente 20 ó 30 minutos.

P.—Luciano, Ud. ese día había ingerido bebidas alcohólicas?

R.—Había tomado dos cervecitas y le pagué dos tragos a este muchacho también. Eso fue todo.

P.—Fue todo lo que bebió?

R.—Si, señor.

P.—Nada más." (T.E. págs. 13 a 14.)

En la repregunta declaró que se negó a dejarse sacar la muestra de sangre por las condiciones en que se encontraba debido a las heridas que había recibido y que no recuerda que el policía le hablara de muestra de orina.

Si examinamos detenidamente el testimonio del policía Guillermo Ramos, veremos que la única prueba incrimina-

toria que aportó en contra del acusado fue el hecho de que el aliento de éste expedía fuerte olor a alcohol. (1) Es cierto que este testigo declaró que el acusado daba tumbos y tenía los ojos rojizos, pero en cuanto a los tumbos, dijo también que frente a él, el acusado estaba normal y que no sabía si los tumbos era consecuencia de los golpes que había recibido. Es probable, aunque no hay prueba sobre ello, que el color rojizo de los ojos se debiera también a la fuerte contusión que recibió en la nariz, o a cualquiera otra causa que no sea necesariamente la de un estado de embriaguez.

El otro testigo Canales, afirmó que cuando se montó en el automóvil con el acusado éste estaba bien pero que después "cuando venía de allá para acá, no estaba como estaba, no lo vi bien" . . . "no estaba como primero" . . . "bueno cuando venía para acá yo dije que estaba borracho porque venía a bastante velocidad" . . . "Nunca corría así, y yo dije, ah, pues, éste está borracho" . . . . "Cuando venía para acá noté que estaba ajumado."

Sin embargo la prueba establece que este testigo estuvo en compañía del acusado desde que se montó en el automóvil hasta que ocurrió el accidente por un espacio de tiempo de dos horas. Durante esas dos horas el acusado tomó solamente dos palos según el testimonio de Canales, o dos cervezas, según el testimonio de dicho acusado. (2)

Esa prueba—el acusado despedía olor a alcohol y durante dos horas tomó "dos palos"—fue la más sustancial que el

---

(1) La presencia de un hálito alcohólico, por sí solo, no es suficiente para sostener que se incurrió en el delito imputado. *Pueblo* v. *Zalduondo Fontánez*, 89 D.P.R. 64 (1963).

(2) En ausencia de prueba presumimos que los "palos" a que se refirió Canales eran los corrientes de "una onza".

Se considera por la ciencia médica que para que el resultado del análisis de sangre del individuo promedio llegue a .05% del 1% de alcohol por peso, deberá haber ingerido 2 onzas de whiskey a 100 grados prueba. Véase Richardson, *"Modern Scientific Evidence"*, § 132, pág. 350. Esto hace mucho menos confiable la afirmación de Canales sobre el estado de embriaguez del acusado apelante así como la conclusión a que llegó el tribunal sentenciador.

tribunal sentenciador tuvo ante sí sobre el estado de embriaguez del acusado.

Podría argumentarse que hay más aun porque Canales declaró que el acusado estaba borracho o estaba "ajumado", pero a poco que se analice todo el testimonio de ese testigo, se comprenderá que su conclusión sobre el estado de embriaguez del acusado no estaba justificada por los hechos. Ingenuamente el testigo dice como llegó a su conclusión. Como el acusado venía a bastante velocidad y él nunca corría así "yo dije, ah pues, éste está borracho". Nada hay en el récord que indique que Canales viajaba con frecuencia o continuamente en el automóvil del acusado. No hay base para creer que Canales sabía que el acusado siempre caminaba despacio en su automóvil. De suerte, que el hecho de que el día del accidente el acusado viajara a velocidad, no puede sostener que nunca antes hubiera corrido a velocidad y que como consecuencia, la velocidad fuera un indicio infalible del estado de embriaguez del acusado. Canales llegó a su conclusión a base de ese indicio principalmente y el Tribunal a quo aceptó esa conclusión sin formular la suya propia. Por otro lado, Canales confirma la teoría del acusado al efecto de que el accidente se debió al reventón de uno de los neumáticos de su automóvil. Canales declaró, tal como lo admitió el acusado, que éste perdió el control del vehículo y que como consecuencia chocó contra un árbol. La causa del descontrol la explicó el acusado. Allí en Corte, durante la celebración del juicio estaba el policía que examinó el automóvil después del accidente y estaba también el propio Canales. Presumimos de que de no ser cierto el testimonio del acusado en cuanto a que la pérdida del control del vehículo había sido causada por la explosión de unos de sus neumáticos, el Fiscal hubiera refutado ese hecho con el policía o con Canales.

En verdad, la prueba en este caso no establece la culpabilidad del acusado más allá de duda razonable. Dicha prueba

da margen a esa duda y debe resolverse a su favor, absolviéndolo.

*Se dejará sin efecto nuestra sentencia de 18 de septiembre de 1964, se revocará la sentencia dictada por el Tribunal Superior y se dictará otra absolviendo al acusado apelante.*